## ARNOLD v. POTTER.

1. **Contract**: CONSTRUCTION: LEX LOCI. The law of the place where the contract is made is to govern in enforcing and expounding it. *Aliter*, if the parties provide for its execution elsewhere; in which case it is to be governed by the law of the latter place.

2. —— AGREEMENT OF PARTIES. If a contract be made in one place to be executed in another, the parties may stipulate that it shall be governed by the law of either.

3. —— INTEREST. And if the rates of interest differ in the two localities, it is competent for the parties to agree upon the rate of either.

4. —— USURY. When the interest expressed is usurious, both by the law of the place where the contract was made and where it is to be executed, the law of the former place will govern as to the consequences of the usury.

5. —— CITIZENS OF DIFFERENT STATES: INTEREST. It is competent for citizens of different States, who are parties to a promissory note, to contract in good faith for the rate of interest, and with reference to the law of the State where the maker resides, and where the property mortgaged to secure the note is situated; although the note is in terms payable in a State different from the residence of either, and the interest reserved is greater than the legal rate of the State where the note is made, or where by its terms it is payable.

6. —— FORM OF CONTRACT. In such case, the *form* of the transaction is immaterial, the cardinal inquiry being, did the parties resort to it for the purpose of disguising the usury, in violation of the law of the State where the contract was made or to be executed.

7. —— APPLICATION OF RULE. P., a resident of Iowa, negotiated a loan of A., living in Massachusetts, and executed therefor his promissory note, payable in New York. To secure the note, a deed of trust on real estate in Iowa was executed to a trustee residing there. The deed and note were then delivered by P. to A., in Massachusetts, and the money received there, pursuant to an agreement entered into when the loan was negotiated. *Held*, that, if P. and A., in good faith and without intent to evade the usury laws, stipulated for the rate of interest allowable in Iowa, which was greater than the legal rate of Massachusetts or New York, that the contract should be enforced accordingly.

8. —— PENAL STATUTES OF ANOTHER STATE. Courts will not enforce the penal statutes of another State.

9. —— USURY LAWS. But a statute which provides for the *forfeiture* of a portion of a usurious contract, is not a penal statute within the meaning of the rule, and will be enforced in the forum where suit is brought.

*Appeal from Lee District Court.*

WEDNESDAY, JUNE 5.

MORTGAGE foreclosure, trial according to the second method. Plaintiff is a resident of Massachusetts, defendant of Iowa. The real estate is situated in Lee county. The mortgage (or trust deed) was acknowledged by defendant in Massachusetts, and by his wife in this State. Love, the trustee, resides in this State, and here accepted the trust. There were eleven notes, one for $10,000 on five years, and ten for $500, each payable at intervals of six months, all made October 11, 1859, and without interest. They were dated at Keokuk, in this State, payable in New York to the order of one Baldwin, who indorsed them to plaintiff, in this State. The notes and deed were delivered by plaintiff to defendant in Massachusetts, and the money received there, pursuant to an agreement entered into when negotiating the loan. The defense was usury, and testimony was introduced tending to show that it was an Iowa contract, and made in good faith in reference to our laws.

Defendant, on his part, claimed that the contract was to be governed by the laws of Massachusetts, where he insists the contract was made, or by the laws of New York, where it was payable. He also claimed that he received but $9,000, and that the contract was therefore usurious by our own laws. The jury, however, found specially against this latter claim, and it is not now insisted that this finding was erroneous. A great number of instructions, as asked by the respective parties, were given and refused, and exceptions duly taken. Verdict for plaintiff for his whole claim, less certain payments not controverted. Judgment accordingly, and defendant appeals.

*D. F. Miller* (with *Cook & Drury*) for the appellant.

I. Contracts made in one place to be executed in another, are to be governed by the law of the place of performance; and if the interest allowed by the law of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest, without incurring the penalty of usury. But if a contract is not made with reference either to the law of the *place* where it is made, or where it is to be performed, being forbidden by *both*, the law of the place governs as to its invalidity. *Andrews* v. *Pond*, 13 Peters, 65; Story on Conflict of Laws, §§ 291, 298, 331, 558 and 305; Walker's Am. Law, 740; 17 John., 510; 4 Id., 285; 3 Story, 465; 13 N. H., 126.

II. The note sued upon being executed in Massachusetts, and made payable in New York, must be governed by the law of one of these places.

III. The taking of the mortgage or trust deed, securing said note on lands in Iowa, does not change the rule nor alter the locality of the contract. Story on Conflict of Laws, § 287, and authorities cited in note, and § 293; 3 Green Ch., 128; 10 Wisconsin, 333.

IV. The usury law of Massachusetts is not a *penal statute*, but simply declares matter in *discharge* of the claim. *Banks* v. *Whittaker*, 22 Ill., 606; 1 Parsons on Cont. (ed. of 1850), 381, 382, and authorities cited in note " A."

*Rankin & McCrary* for the appellee.

I. The general rule, that a contract is to be governed by the law of the place of performance, is not denied. But it is a rule with many exceptions; and in every case where there is an *honest intent* that the law of another place shall govern, there is an exception to this general

rule. *Butters* v. *Olds et al.* 11 Iowa, 1; *Townsend, Administrator,* v. *Riley,* (shortly to appear in New Hampshire Rep.), Am. Law Reg., February, 1867, 251; *Chapman* v. *Robertson,* 6 Paige Ch., 627; Am. Law Reg. (old series), 550.

II. It is also a well settled doctrine that the validity of a mortgage is always to be determined by the law of the place where the mortgaged property is situated. *Loviny* v. *Pairo,* 10 Iowa, 285, and authorities cited in the argument of Mr. Rogers.

III. The courts of this State will not enforce the penal statutes of another State unless those statutes render the contract void *ab initio. Gale* v. *Eastman,* 7 Metcalf, 14; *Scovill* v. *Canfield,* 14 John., 337; *De Wolf* v. *Johnson,* 10 Wheaton, 367; *Wright* v. *Bartlett,* 43 N. H., 54; 23 U. S. Dig., 370, § 5; 4 Gilm., 421.

WRIGHT, J.—The record does not undertake to set out all the evidence. Only so much is given as was deemed

1. CONTRACT: construction: *lex loci.*

necessary to the understanding of the positions assumed by the respective parties. The statutes of New York and Massachusetts were offered in evidence, and are found in the record.

The parties differ upon the question whether this was an Iowa contract and to be governed in its enforcement by our laws, or whether the laws of Massachusetts or New York apply. There is also the further point, that if the Massachusetts statute governs, then that it affixes a *penalty* for taking or receiving usurious interest, which penalty the courts of this State will not enforce.

The questions made are important, and not free from difficulty. A careful examination of the entire record and an attentive consideration of the full and able oral and printed arguments of counsel, have brought us to the conclusion that the law of the case was correctly given to

the jury, with a single but important exception, to be noticed in the course of the opinion.

The general rule is well settled that the law of the place where the contract is made is to govern in enforcing and expounding it, unless the parties provide for its execution elsewhere, in which case it is to be governed by the law of the latter place.

The parties may, however, if it is made in one place
2. —— agreement of parties. to be executed in another, stipulate that it shall be governed by one or the other.

And on the subject of interest therefore, if the law of the one place differs from that of the other, it is com-
3. —— interest. petent for them to agree upon the rate in either locality, and thus, by their contract, determine the law which shall govern this incident thereof. Hence it has been held that a note made in this State with *ten per cent*, payable in New York, which declares void all contracts reserving more than *seven per cent*, would be maintained, as the parties thereby expressly stipulate for a rate of interest allowed by the place of making the contract. *Butters* v. *Old*, 11 Iowa, 1 ; and see *Cox* v. *United States*, 6 Pet., 172 ; *Smith* v. *Smith*, 2 John., 236 ; *Thompson* v. *Ketcham*, 4 Id., 285 ; *Gibbs* v. *Fremont*, 20 Eng. L. & E., 555 ; *Stewart* v. *Ellice*, 2 Paige, 604 ; *Berrien* v. *Wright*, 26 Barb., 208 ; *Harvey* v. *Archibold*, 1 Ry. & M., 184 ; *Andrews* v. *Pond*, 13 Pet., 65 ; *Depau* v. *Humphrey*, 20 La., 1 ; *Van Shaick* v. *Edwards*, 2 John. Cas., 355 ; *De Wolf* v. *Johnson*, 10 Wheat., 367 ; *Chapman* v. *Robertson*, 6 Page, 627 ; *Peck* v. *Mayo*, 14 Vermt., 33 ; Story's Conflict of Laws, p. 296 ; 2 Kent. (3 ed.), 460 ; 2 Parson on Cont., 584, and note *h*, where the authorities are very fully collected.

Another rule may be stated thus : Where the interest
4. —— usury. expressed is usurious both by the law of the place of making the contract and that where it is

payable, the law of the former place will govern as to the consequence of the usury. *Andrews* v. *Pond, supra; Mix* v. *Mad. Ins. Co.,* 11 Ind., 117. And, therefore, if these notes were made in Massachusetts, payable in New York, being usurious under the laws of both States, the law of the first would govern.

The question, of more importance, however, arises upon the facts as claimed by appellee. The indorsee, and it **5. —— citizens of different States: interest.** may be admitted the real payee, resided in Massachusetts. The loan was negotiated there by the payor, a resident of this State. The notes were signed in Massachusetts, dated and indorsed here, and delivered there by the maker. The security was upon lands in this State, and though acknowledged by the defendant (the husband) there, it was executed by the wife here. The interest reserved is legal under our statute.

Plaintiff claims that the parties in good faith contracted with reference to the laws of this State, intending to make this an Iowa contract. And upon this subject the court instructed as follows: "If defendant went to Boston and urged the loan and promised ten per cent under the laws of Iowa, and all the arrangements and contracts were made as to the laws of Iowa in good faith, and no more than ten per cent was contracted for, then the defense fails and plaintiff can recover;" and also, "if the parties in good faith loaned and borrowed the money sued for, with a full understanding that the law of Iowa was to govern as to the interest, then the laws of New York and Massachusetts can have no influence here, but the understanding of the parties must prevail."

These instructions were based, of course, upon the facts claimed, as above set forth; and now the question is, do they contain the law?

Our opinion is that, if the parties acted in good faith,

that is, if there was no intention to evade the law, it was competent for them to thus contract, and that the defense could not avail. In thus holding, we, of course, do not decide that two citizens of Massachusetts could make a contract in that State, payable there or in New York, agree to be governed by the laws of Iowa or California, and thereby avoid the consequences of the usury. Nor do we hold that a citizen of one State could make his note in another to a resident there, payable in a third, with interest as allowed in a fourth. But what we do hold is that, if A., of Iowa, in good faith, borrows money of B., in Illinois, gives security on land in Iowa, and they, in good faith, agree that the law of Iowa shall govern; that a note given in pursuance of said contract in Illinois, bearing the interest allowed by our laws, would not be usurious.

While parties will not be allowed to evade the law, the question after all is, was the course adopted as a cover for usury?

The intention of the parties is always an important element, and should never be disregarded. To what place did the parties in good faith have reference, in negotiating the loan, may always be shown. We concede the proposition that, if the contract is made between the citizen of one State and the citizen of another, in the former, without any agreement or understanding, it is to be governed by the law of the place where made, or where it is to be executed, if still in another State. Story's Conflict of Laws, § 299; *Smith.* v. *Meade,* 3 Conn., 253; *Jacks* v. *Nichols,* 5 Barb., 38.

But, in this concession, there is no abandonment of the position that the parties may, in good faith, contract with 6. —— form of contract. reference to the law of the place where the payor resides, and where the property upon which the security is taken is located. For there being, in the latter case, no attempt to evade the law, courts will not apply its

Arnold v. Potter.

penalties. The form of the transaction is nothing, the cardinal inquiry being, when the contract specifying the amount reserved is express, did the parties resort to it as the means of disguising the usury in violation of the laws of the State, where the contract was made or to be executed. And, in arriving at this intention, all of the facts are to be taken into consideration. Thus, in this case, the fact that the notes were dated in Iowa, made payable to the party here, and by him indorsed in this State; that the trustee resided here and in no other place could the security be made available; that the payor resided here; that he went to Massachusetts to negotiate the loan: and if, under these circumstances, the parties, in good faith, stipulated for the interest allowed here, the contract should be enforced. To hold otherwise would enforce forfeitures without reason, and extend unwarrantably the operation of penal statutes. Not only so, but it would be setting at naught the solemn agreements of parties, entered into with the best of motives, and when they have had no purpose of violating the laws of any State. Then, again, it would compel our courts to enforce the laws of other States, and hold parties to their penalties and consequences, when they have, in express terms, agreed to be governed by ours. Upon this subject, generally, see the following authorities: *Thompson* v. *Paroles*, 2 Sim., 194; *Hosford* v. *Nichols*, 1 Paige, 220; *Chapman* v. *Robertson*, 6 Id., 627; *Berrien* v. *Wright*, 26 Barb., 208; Story's Conflict of Laws, §§ 293–6, and note 1; 3 Parsons on Cont., 114; *Richards* v. *Globe Bank*, 12 Wis., 692; *Vliet* v. *Camp*, 12 Id., 198.

*7. —— application of rule.*

What was the contract between these parties was a question for the jury to determine. Appellant denies the position assumed by appellee, and insists that this was a contract made in Massachusetts, payable in New York, and that there was no agree-

*8. —— penal statutes of another State.*

ment beyond what appears upon the face of the notes; and assuming that the contract might be governed by the law of Massachusetts, the appellee asked and the court gave this instruction: "This court will not enforce the penal statute of another State relating to usury, when that statute does not make the contract wholly void; and, therefore, the statute of Massachusetts is not to be considered by the jury." In this respect, as intimated in the commencement of this opinion, the court below erred.

The statute of Massachusetts fixes the rate of interest at six per cent. "If more is reserved, the contract is not void, but the defendant recovers full costs and plaintiff forfeits threefold the amount of the whole interest reserved, and shall have judgment for the balance only, which shall remain due after deducting the threefold amount."

9. —— usury laws.

Now, we do not controvert appellee's proposition that our courts will not enforce the penal statutes of another State. The error is in the conclusion based upon such proposition, that, therefore, this statute of Massachusetts will not be enforced, if the contract falls within its provisions. Some cases are relied upon by counsel to which we first direct attention. *Gale* v. *Eastman* (7 Met., 14) was expressly ruled upon the ground that the law of New Hampshire, where the contract was made, peculiarly *related to the remedy*, and could not be enforced in Massachusetts. But, aside from the proposition that the remedy provided could only extend to suits brought in New Hampshire, there is nothing remotely bearing upon the question now before us.

There is no intimation that the court refused to act, because the law of the place of the contract was penal; and the same remark is applicable to *Wright* v. *Bartlett* (43 N.H. 548). *Scoville* v. *Canfield* (14 John., 338) decides nothing more, except so far as it states the admitted

proposition that the penal laws of one State could have no operation in another, that such laws are strictly local, and affect nothing more than they can reach. *De Wolf* v. *Johnson* (10 Wheat., 367) touches the point here made, very remotely, if at all. It certainly does not go to the extent claimed by the appellee. On the contrary, there is much in it to favor the opposite view. *Sherman* v. *Gassett* (4 Gill., 521) is more in point. It was decided by a divided court, LOCKWOOD, J., delivering the opinion of six of the judges, and KERMER, J., the dissenting opinion of the other three. We do not propose to examine it at length. The argument of the majority of the court strikes us as being based upon improper assumptions, and is equally inconclusive in its reasoning; and most pertinently does the dissenting opinion dispose of the whole argument, by saying: " To maintain that we are bound to declare a usurious contract wholly void, when the laws of the place of contract make it so, whereby the creditor is deprived of the whole of his claim, but that we are not bound to regard the law when it provides for a forfeiture only by which the creditor loses but a part of his claim, seems to involve a singular inconsistency. It, in other words, involves the following remarkable syllogism: " The law everywhere avoids usurious contracts, when they are declared wholly void by the law of the place. This contract was void in part, and consequently it is good in whole."

But a more conclusive answer to the case is found in *Barnes* v. *Whitaker* (22 Ill., 606), where the Supreme Court of that State enforced the statute of this State upon a contract made here, so far as it declares that plaintiff shall have judgment for the principal sum, without either interest or costs. They refused, of course, to adjudge the penalty of ten per cent to the school fund; but the right of the defendant to insist upon the enforce-

Arnold v. Potter.

ment of our statute in the other respect, is maintained by an argument strong and unanswerable: "It is admitted," says the chief justice, in summing up, "that such would be the effect of this law if it had declared that plaintiff should have judgment for nothing. How much more so, in common sense, when it (only) allowed him to take judgment for the principal sum borrowed.

"The distinction in the two cases is not only without reason, but is against all reason, and all sound law and the philosophy of the law."

Now, upon principle, why is not this case in point? Our law says plaintiff shall have judgment *for the principal sum without interest or costs.* The Massachusetts statute is, that he shall have judgment for *the balance only, which shall remain after deducting the threefold amount.* In neither case is there a criminal law to enforce, a penal statute having operation beyond the limits of the state enacting it. The legal effect of the contracts could not be different in different States, and it is according to this legal effect that all courts are bound to enforce them.

If the law affixed a penalty, and the defendant was in this case seeking to collect it, or if, as under our statute, the defendant forfeited a certain amount to the school or other fund, and we were asked to declare the same, we would have cases to which the instructions in question would apply. Is forfeiture the same as penalty in this connection? This is easily answered. If the law attaches a penalty, as the consequence of an act, it may be sued for and recovered; but it will be enforced alone in the State declaring the same. If, on the other hand, a person's property may be forfeited or lost by some fault or offense, the forfeiture is not enforced except in the prosecution for the fault or offense; and, if the party guilty of the fault seeks to enforce the contract which he has obtained as the fruits of such offense, he can take no part of the forfeiture.

And when he declares and seeks to recover upon such a contract, in another State, if the courts of that State hold that his contract shall be carried out as interpreted by the laws of the State where made, they inflict upon him no penalty, they are not enforcing the penal laws of another State, but enforce the statute of the sister State so far as it effects a discharge of the claim. Gambling is punished by our statute, and a gambling contract is void. Suppose our laws declared that a party holding such a contract might recover one-half and no more. Now, the penalty, the penal statute, would not be enforced in another State; but, in an action upon the contract there, the holder would be limited in his recovery to the one-half. The Massachusetts statute not only uses the word "forfeit," but says the plaintiff shall only have judgment for so much; thus unmistakably keeping up the distinction between a law of this kind and one penal in its nature.

But take still other illustrations: a stockholder fails to comply with the terms of the articles in the payment of his stock, and these articles declare that for such non-compliance his share shall become forfeited. Will any one pretend that this is a penalty within the meaning of the law? Then, again, equity recognizes the distinction, when it is said that a party will *always* be relieved from a *penalty*, if compensation can be made because it is deemed as a mere security, and yet, though compensation can be made, relief will not always be given against a *forfeiture*. So, again, we speak of a *forfeiture* in case of a breach of covenant, but never of it as a *penalty*. So of a penalty as contradistinguished from liquidated damages, but never of *forfeiture* in the same connection. Then, again, of *forfeiture* as a recompense to an injured party for the wrongful or illegal act of another, by which the latter loses his interest in the thing. But penalty

carries a very different idea; it is the punishment inflicted for not executing a prior obligation, the object being to insure the primary engagement of covenant. Bouvier's Inst., vol. 1, 292; 2, 146; 4, 217.

Our conclusion, therefore, is, that the court below erred in giving the instructions above quoted.

The testimony is not all before us. We cannot, as a consequence, hold that the jury necessarily found that this was an Iowa contract. If they believed it was a Massachusetts contract, then, from the law given to them by the court, they must still have found for plaintiff; and as we do not know but the testimony justified such conclusion, the judgment is reversed and remanded.

Reversed.